IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | * | |
| PETER PHILIP MEADOWS, | * | 1:15-cv-041 |
| Debtor | * | |
| | * | |
| PETER PHILIP MEADOWS, | * | |
| Appellant, | * | |
| v. | * | Bankruptcy Case: |
| | * | 14-11431-SDB |
| U.S. BANK, N.A., as Legal Title Trustee for Truman 2013 SC4 TITLE TRUST, | * | |
| Appellee. | * | |

**O R D E R**

Presently before the Court is Appellant Peter Philip Meadows's appeal from the Bankruptcy Court. For the reasons set forth below, the Bankruptcy Court is **AFFIRMED**.

**I.   Background**

On August 5, 2014, Appellant's house was sold at foreclosure auction and the holder of the security deed, U.S. Bank, N.A. ("U.S. Bank"), was the winning bidder.[1] Later on that same day, Appellant filed, pro se, for bankruptcy in the

---
[1] The Court has not located a document in the record to verify the date of this sale and the parties have not cited to one, but both sides indicate on appeal and indicated in the court below that the sale took place on this date.

Southern District of Georgia, which resulted in an automatic stay pursuant to 11 U.S.C § 362. (See Bankr. Doc. 1.) This was not Appellant's first bankruptcy. He has filed on two previous occasions: he first filed in 2010, which was dismissed in 2012, and a second time in 2012, which was dismissed in 2013. See In re Meadows, No. 10-12221 (Bankr. S.D. Ga. 2010); In re Meadows, No. 12-10695 (Bankr. S.D. Ga. 2012). Additionally, U.S. Bank is not the first entity to hold the security deed to the property. The record indicates that Wells Fargo transferred the deed to U.S. Bank (Bankr. Doc. 12, Ex. A at 1), and other entities held the deed prior to Wells Fargo. (See Bankr. Doc. 12, Ex. A.)

On August 14, 2014, U.S. Bank moved for relief from the automatic stay that followed the bankruptcy filing and to validate the foreclosure sale. (Bankr. Doc. 12.) On September 30, 2014, Appellant moved to extend the stay or dismiss the case. (Bankr. Doc. 35.) The Bankruptcy Court then held a hearing on October 2, 2014, but postponed discussing the merits so that Appellant could retain counsel. After Appellant retained counsel, the Bankruptcy Court held a hearing on October 20, 2014, at which time the Bankruptcy Court gave Appellant's counsel additional time to file briefs on the issues. (See Bankr. Doc. 57.) Also at that hearing, the Bankruptcy Court ordered Appellant—while the issues were being briefed—to remit $3,900.00 to his attorney's trust account and to make timely payments of $1,300.00 per month to that account, which Appellant

apparently followed to an extent. (Id.; Bankr. Doc. 63.) In a November 5, 2014 Order, the Bankruptcy Court explained that if Appellant failed to make those payments, it would grant U.S. Bank's motion and validate the foreclosure. (Bankr. Doc. 57.) On November 5, 2014, Appellant's attorney filed a brief that addressed Appellant's request to extend the automatic stay and U.S. Bank's motion to validate the foreclosure. (Bankr. Doc. 58.)

On January 16, 2015, Appellant's attorney moved to withdraw as counsel because of disagreements with Appellant, and the record indicates that he sent Appellant notice of his intent to withdraw on December 19, 2014. (Bankr. Doc. 75.) Notably, in that notice, Appellant's attorney stated: "[P]lease allow me to remind you that the Court ordered you to make your monthly mortgage payments into my trust account. I currently hold $3,900.00 which represents mortgage payments for the months of September, October, & November 2014. Your next mortgage payment was due on December 1st, 2014." (Bankr. Doc. 75, Ex. A.) On January 14, 2015, U.S. Bank filed with the Bankruptcy Court an affidavit stating that Appellant was in default of the November 5th Order because he had failed to make payments into the trust account. (Bankr. Doc. 77.)

On February 17, 2015, Appellant filed, without the assistance of his attorney, a motion based on standing and the violation of a stay that resulted from the 2012 bankruptcy.

3

(Bankr. Doc. 87.) The Bankruptcy Court held a hearing on these matters on February 24, 2015. At the hearing, the Bankruptcy Court heard from Appellant's counsel and opposing counsel about the extension of the stay and validating the foreclosure. It also allowed Appellant to address his concerns raised in his February 17th brief. Following Appellant's attorney's arguments, the Bankruptcy Court granted his motion to withdraw. In the end, the Bankruptcy Court denied the motion to extend the stay and granted the motion to validate the foreclosure. (See Bankr. Docs. 91, 92.) In the written Order, the Bankruptcy Court relied on Appellant's failure to make timely payments under the November 5th Order as the basis for validating the foreclosure. (Bankr. Doc. 91.) But the record from that hearing indicates that the Bankruptcy Court also determined that the property was not subject to the bankruptcy stay because the foreclosure sale took place before Appellant filed for bankruptcy. Additionally, after reviewing certain documents and hearing argument from Appellant, the Bankruptcy Court ruled against Appellant on the arguments he brought on his own behalf. Appellant now appeals to this Court.

## II. Legal Standard

"Findings of fact by a bankruptcy court on an appeal to the district court are reviewed under the 'clearly erroneous' standard of review. Findings of law, and the application of law to the facts by a bankruptcy court are reviewed de novo." Hughes v. Ga. Dep't of Revenue, No. CV 407-145, 2008 WL 1967500, at *1 (S.D. Ga. May 5, 2008) (citations omitted). Also, "[i]n general, [courts] show leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." Christiansen v. McRay, 380 F. App'x 862, 863 (11th Cir. 2010) (citation omitted) (internal quotation marks omitted).

## III. Discussion

Appellant's brief to this Court references several issues.[2] Although the exact issues he wishes to appeal are unclear, the

---

[2] The Court notes that Appellant filed two briefs. The first brief is labeled "Draft," and the Clerk's office indicates that Appellant notified the Court that he mistakenly filed that brief. Accordingly, this Order addresses the arguments raised in the second brief. Nonetheless, the Court notes that the briefs appear to raise similar claims. Only a few different arguments appear to be raised in the first brief: a Due Process violation, a 42 § 1983 claim, a Fair Debt Collection Practices Act ("FDCPA") claim, and a violation of "The Georgia Fair Lending Act." The Court declines to address these issues thoroughly but notes that they all fail. Although Appellant is unclear, the Court assumes his Due Process claim is based on claims that he could not present certain documents. As discussed below, Appellant was given a chance to speak on his own behalf and present documents at the February 24th hearing, and there is no evidence that the Bankruptcy Court kept him from doing so. Accordingly, Appellant has not shown a Due Process violation. See Melvin v. C.I.R., 303 F. App'x 791, 793 (11th Cir. 2008) ("Rudimentary due process includes reasonable notice and an opportunity to rebut the charges and be heard."). Appellant's other claims are against a law firm not a party to this bankruptcy proceeding, and there is no indication that Appellant brought these claims in the court below. Even if the Court were to assume that it is proper to bring these claims for the first time on appeal from a bankruptcy court—which it does not—Appellant's claims still fail. First, his FDCPA claim merely references a law firm it claims violated the

Court attempts to thoroughly address Appellant's concerns. The Court notes that the essence of Appellant's appeal is based on the issues he sought to raise on his own behalf in the Bankruptcy Court. The Court, therefore, focuses on those issues.

A. **Appellant's attempt to present documents**

A large part of Appellant's appeal rests on his claim that the Bankruptcy Court refused to allow him to present documents. Although his brief is not clear on the issue, it appears that Appellant claims that he wanted to present documents regarding U.S. Bank's standing to foreclose and documents that show fraud by different banks, Mortgage Electronic Registration Systems, Inc. ("MERS"), and certain law firms. The documents relating to standing relate to Appellant's arguments that an alleged violation of a previous stay prevents this foreclosure and that U.S. Bank could not foreclose without holding a promissory note, the merits of which are discussed more thoroughly below. Regarding his fraud claims, Appellant does not explain exactly what the alleged documents say or how they would affect his case. He merely references documents that he claims show

---

statute and recites a portion of the relevant statute, and it fails to state a prima facie case. See Helman v. Udren Law Offices, P.C., 85 F. Supp. 3d 1319, 1323 (S.D. Fla. 2014). Appellant appears to base the § 1983 claim on a law firm's involvement in the non-judicial foreclosure, which would fail to meet the state-action requirement. See Tonea v. Bank of Am., N.A., 6 F. Supp. 3d 1331, 1336-37 (N.D. Ga. 2014). And Appellant's attempt at a claim under the Georgia statute fails because it merely states that the law firm violated multiple code sections, but does not provide any factual support.

misconduct.³ For example, his brief states: "[Appellant] has a complete volume of nearly 100-pages of references specific [to the law firm] rendering fraudulent documents and forgeries." (Appellant's Br. at 19.) Regardless of what any of these documents say, Appellant's argument that he was denied the privilege of entering documents fails.

First, Appellant's arguments about the documents reference only the October 20, 2014 hearing. A review of that hearing shows that Appellant did not attempt to present any documents. In fact, he did not speak at that hearing. The Court has also reviewed the February 24, 2015 hearing. During that hearing, Appellant did speak on his own behalf and sought to present two documents to the Bankruptcy Court. The Bankruptcy Court denied admission of his first document, but only because the document had already been admitted. The Bankruptcy Court then allowed Appellant to present the second document—an affidavit that the Court discusses again below. Appellant did not seek to present any other documents. Appellant did reference knowledge about certain documents that he claimed showed fraud and misconduct by certain parties, but he never offered to present them to the Bankruptcy Court. Because Appellant has not shown that the Bankruptcy Court denied a request to present documents that

---

³ It appears that Appellant's argument may be that these allegedly fraudulent documents relate to his challenge to the validity of the assignments of the security deed, which is discussed more thoroughly below. Accordingly, as discussed below, even if these documents had been presented and admitted, they would be irrelevant to these proceedings.

7

would affect his case, to the extent Appellant argues the Bankruptcy Court erred on these grounds, the Court **AFFIRMS** the Bankruptcy Court.

### B. Appellant's standing arguments

One of the arguments Appellant raised on his own at the February 24, 2015 hearing was that U.S. Bank lacked standing to foreclose on his property. Although he does not clearly address this issue on appeal, he argued below that U.S. Bank lacked standing because Wells Fargo—the assignor of the security deed to U.S. Bank—held only the security deed, and not the promissory note. Appellant's argument fails because Georgia law "does not require a party seeking to exercise a power of sale in a deed to secure debt to hold, in addition to the deed, the promissory note evidencing the underlying debt." You v. JP Morgan Chase Bank, 743 S.E.2d 428, 429 (Ga. 2013). That is, "[p]ossession of a valid security deed is sufficient to exercise the power of sale in accordance with the terms of the deed even if [the lender] does not hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed." Crespo v. Coldwell Banker Mortg., 599 F. App'x 868, 872 (11th Cir. 2014) (alteration in original) (citation omitted) (internal quotation marks omitted). To the extent that Appellant appeals on this ground, the Bankruptcy Court is **AFFIRMED**.

Appellant also argues that U.S. Bank lacks standing because of an alleged defect in the assignment of the security deed. He

appears to argue that U.S. Bank could not foreclose because, somewhere in the chain of assignments of the security deed, there is an issue with the validity of an assignment. To support this argument during the proceedings below, Appellant pointed to the above-mentioned Affidavit of Erroneous Assignment.[4] The Bankruptcy Court determined that the affidavit simply evidenced that the assignor mistakenly assigned the same security deed to the same assignee twice and the affidavit cured that error. Additionally, the Bankruptcy Court ruled that Appellant lacked standing to challenge the validity of an assignment. The Court agrees with the Bankruptcy Court. First, Appellant has not disputed the Bankruptcy Court's interpretation of the affidavit. Second, Appellant lacks standing to challenge the validity of the assignment because Appellant was not a party to that contract. See Crespo, 599 F. App'x at 873 ("To the extent that the [homeowners] challenge the validity of the assignment, they are third parties to that contract and, therefore, lack standing to challenge it.") (citing Beus v. McGriff, 413 S.E.2d 538, 539 (Ga. Ct. App. 1991)). Appellant appears to assert that he has the right to challenge the assignment because he is a party to the security deed. But that argument falls short; he has not alleged that he was a party to the *assignment* of the security deed. Because Appellant has

---

[4] Although the record is clear that Appellant produced this document during the hearing, he has not produced it on appeal or disputed the Bankruptcy Court's interpretation of the document.

failed to present any evidence that shows that U.S. Bank did not hold the security deed and because Appellant lacks standing to challenge the validity of any transfer of the deed, the Bankruptcy Court is **AFFIRMED** on this ground.

Finally, as part of his standing argument, Appellant asserts that Wells Fargo violated a previous stay, which he claims prevents U.S Bank from foreclosing on his property. Appellant essentially claims that, while under an automatic stay during 2012-2013 (case no. 12-10695), Wells Fargo, which held the security deed at that time, attempted to foreclose on the home. Appellant supports this purported violation of the 2012-2013 stay by pointing to letters and documents from Wells Fargo that discuss Appellant defaulting on his loan and that Wells Fargo was referring his mortgage to foreclosure. (See Doc. 6, Exs. A-E.) Citing several cases, Appellant argues that Wells Fargo's actions are void and prevent the present foreclosure. Appellant's arguments, however, are without merit. The cases Appellant cites are distinguishable from this case because the courts were faced with actions they could void. See Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (finding that a court violated an automatic stay when it issued a foreclosure judgment); Smith v. First Am. Bank, N.A. (In re Smith), 876 F.2d 524, 526-27 (6th Cir. 1989) (finding that the sale of a repossessed car was in violation of an automatic stay and, therefore, void); In re Prine, 222 B.R. 610,

612-13 (Bankr. N.D. Iowa 1997) (finding a lien void because it was filed in violation of an automatic stay); <u>In re Moler</u>, 152 B.R. 561, 562-63 (Bankr. S.D. Ill. 1993) (finding a judgment lien void because it violated an automatic stay). In this case, however, Appellant has pointed to no action that may be declared void. That is, he has only pointed to evidence that Wells Fargo contacted him regarding his default while he was under bankruptcy protection. There is no evidence demonstrating that Wells Fargo actually foreclosed. In fact, considering that U.S. Bank subsequently foreclosed on the same home, the opposite appears true.

Appellant's brief goes on to discuss the emotional distress and hardship that he and his family faced because of Wells Fargo's actions. These claims, however, sound in tort, and Appellant has failed to demonstrate how these claims can properly be redressed by this Court, especially since the alleged violation involves different bankruptcy proceedings and Wells Fargo is not a party to the current proceedings. Accordingly, the Bankruptcy Court is **AFFIRMED** on these grounds.

C.  **Securitization**

Appellant argued below that the securitization of his mortgage somehow prevented the foreclosure. Although he does not clearly raise this issue on appeal, the Court will nonetheless briefly address that argument. Appellant has not produced any authority—and the Court is not aware of any—to

support his argument. Other courts that have addressed this issue have similarly dismissed the idea that securitization somehow prevents foreclosure or relieves an obligation to pay. See Montoya v. Branch Banking & Trust Co., Case No. 1:11-CV-01869-RWS, 2012 WL 826993, at *6 (N.D. Ga. March 9, 2012) ("While it may well be that Plaintiff's mortgage was pooled with other loans into a securitization trust . . . that fact would not have any effect on Plaintiff's rights and obligations with respect to the mortgage loan, and it certainly would not absolve Plaintiff from having to make loan payments or somehow shield Plaintiff's property from foreclosure." (citation omitted)). Accordingly, the Bankruptcy Court is **AFFIRMED** on this ground.

**D. Appellant's counsel's motion to withdraw**

On appeal, Appellant also claims that the Bankruptcy Court erred by not granting his attorney's motion to withdraw—which was filed on January 6, 2015 (see Bankr. Doc. 75)—until the February 24, 2015 hearing. He essentially argues that, had the Bankruptcy Court granted that motion earlier, Appellant would have been able to better argue his case. At the February 24th hearing, the Bankruptcy Court explained that it waited to rule on the motion until after Appellant's counsel argued at the hearing because it thought it served his best interest. The Bankruptcy Court also, as mentioned, gave Appellant an opportunity to make the arguments he brought on his own behalf.

Generally, judges are given broad discretion to manage their cases. See, e.g., Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366-67 (11th Cir. 1997) ("We recognize that district courts enjoy broad discretion in deciding how best to manage the cases before them."). And a litigant must show that mismanagement by a judge results in some prejudice. See id. at 1367 ("When a litigant's rights are materially prejudiced by the district court's mismanagement of a case, we must redress the abuse of discretion.").

In this assertion of error, Appellant does not demonstrate how he would have argued his case differently had the motion been granted earlier. He simply asserts that he would have argued against U.S. Bank's standing. But at the hearing, Appellant was afforded time to present his arguments, which included his claims that U.S. Bank lacked standing. Considering that Appellant was given adequate opportunity to be heard and the Bankruptcy Court's justification for delaying its ruling on the motion, Appellant has not persuaded the Court that there was any error on this issue. Accordingly, the Bankruptcy Court is **AFFIRMED** on this ground.

### E. The Bankruptcy Court's compliance order and foreclosure validation

Appellant also challenges the Bankruptcy Court's February 25, 2015 Order validating the foreclosure sale. The November 5, 2014 Order required that Appellant remit $3,900.00 to his

13

attorney's trust account and make monthly payments of $1,300.00 every month while the motion to validate the foreclosure and the motion to extend the stay were pending. The Order expressly provided: "If Debtor fails to timely remit said payments, U.S. Bank's motion will be granted." (Bankr. Doc. 57.) When Appellant's attorney moved to withdraw, he sent Appellant a letter explaining his withdrawal and reminding him that his monthly payment had already come due. (See Bankr. Doc. 75, Ex. A.) At the hearing, no one disputed that Appellant had failed to timely make the payments, and Appellant does not now assert that he did. Instead, he argues that he was unsure about whether to continue payments to his attorney after his attorney moved to withdraw.[5] That argument is not persuasive. The November 5, 2014 Order makes clear that if Appellant failed to timely tender the required payments to his attorney's trust account, the Bankruptcy Court would validate the foreclosure. And the Bankruptcy Court entered no other order or ruling modifying that requirement. Appellant's argument is especially unpersuasive when viewed in light of his attorney's letter, which reminded Appellant to make his payments.[6]

---

[5] The Court notes that, in his brief, Appellant references a November 27, 2014 letter to the Bankruptcy Court about where to send the money. But a review of the docket shows only one letter from Appellant to the Bankruptcy Court around that date, and that letter does not ask for direction on those payments. (See Bankr. Docs. 68, 69.)

[6] The Court also notes that, although the Bankruptcy Court does not appear to have addressed this issue, the letter from Appellant's attorney is dated December 19, 2014 and indicates that Appellant's payment "was due on December 1st, 2014." (Doc. 75.) Thus, the letter indicates that Appellant

14

Moreover, even if the Court were persuaded that the Bankruptcy Court erred by validating the foreclosure based on Appellant's late payments, the Bankruptcy Court had an alternative reason. Although not expressly mentioned in the Order validating the foreclosure, at the hearing, the Bankruptcy Court ruled that Appellant had lost his property rights in the home before he filed for bankruptcy. Accordingly, the property was not protected by the stay. "[U]nder Georgia law debtor's equity of redemption terminates upon sale to the highest bidder on the date the foreclosure sale is held." In re Sanders, 108 B.R. 847, 849 (Bankr. S.D. Ga. 1989). Property sold before a party files bankruptcy, therefore, will not be part of the bankruptcy estate. See id. ("Therefore, the Debtors' right to redemption under state law expired on October 4, 1988, leaving the Debtors with no interest in the property on October 5, 1988, the date they filed their Chapter 13 petition."). Here, Appellant did not file for bankruptcy protection until after the foreclosure sale had been completed. Accordingly, he had no rights in the property.

Because the Court is not persuaded that the Bankruptcy Court erred by validating the foreclosure based on Appellant's late payments, and because the Bankruptcy Court's alternative reasoning is equally as sound, the Bankruptcy Court is **AFFIRMED** on this ground.

---

was past due on payment before his attorney informed Appellant that he was withdrawing, which counters his confusion argument.

15

**IV. Conclusion**

Because Appellant has not presented any reversible error by the Bankruptcy Court, its rulings are **AFFIRMED**.

**ORDER ENTERED** at Augusta, Georgia this 18th day of December, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA